UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

COREY MARQUIS WARD,

                            Plaintiff,

-against-                                    08 Civ. 7380 (RJH)

**MEMORANDUM OPINION AND ORDER**

THE CITY OF NEW YORK, et al.,

                            Defendants.

---

Richard J. Holwell, District Judge:

On May 8, 2007, thirteen year-old J.B. told NYPD officers she had had sex with plaintiff Corey Ward, her mother's 28 year-old boyfriend. She made the statements in a hospital, where the police had taken her after responding to her report of a sexual assault. First she said Ward had forcibly raped her. Then she equivocated and said Ward had never raped her, but that the two had had consensual sex multiple times. She also told the officers that her mother consistently sided with Ward in disagreements, which made J.B. feel alienated, and she acknowledged that she first mentioned Ward's conduct while she was having an argument with her mother.[1] J.B. signed a criminal complaint and the

---

[1] Def. Ex. B at NYC 13; Pl. Ex. 2 at NYC 14. These documents contain the officers' reports of J.B.'s allegations. The page marked "NYC 13" includes a section titled "Notification" in which the officers described their interactions with J.B. on a general level: they received a report of sexual assault, they went to the 13 year-old victim's home and took her to the hospital, they learned that the alleged perpetrator was the victim's mother's boyfriend, and they learned that the victim first made the allegations during an argument with her mother. The next page, marked "NYC 14," contains a more detailed description of J.B.'s statements to the officers in a section titled "C/V [Child Victim] Interview." This section describes J.B.'s equivocation and her comments about feeling alienated due to her mother's relationship with Ward. Disturbingly, defendants omitted this second page of the report from their motion papers and instead submitted an exhibit containing "NYC 13" as a single page. Plaintiff submitted "NYC 14" in his

officers, relying on her statements alone, arrested and imprisoned Ward; he remained in custody for five days.[2] The record before the Court does not reveal whether J.B. was ever examined at the hospital or whether the officers knew the results of any physical examination prior to plaintiff's arrest. Nor does the record indicate whether the officers conducted any independent investigation of J.B.'s accusations before making the arrest. The criminal case against Ward was dismissed on October 31, 2007, apparently for lack of evidence.[3] Ward now sues the City, the NYPD, and the arresting officers in their individual and official capacities for, *inter alia,* false arrest and false imprisonment under 18 U.S.C. § 1983.

Defendants argue that probable cause to arrest Ward existed as a matter of law. They originally moved for judgment on the pleadings on that ground, but both sides submitted documents beyond the scope of the pleadings—including police reports, criminal court records, and affidavits—in connection with the motion, so the Court converted it to a motion for summary judgment and allowed the parties an additional thirty days to submit further evidence. Neither side made any supplemental submissions.

## DISCUSSION

Probable cause is a complete defense to the constitutional torts of false arrest and false imprisonment. *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996). "Probable cause to arrest a person exists if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being

---

opposition and noted defendants' omission. Though defendants had an opportunity to explain the error in their reply brief, they did not do so.
[2] Complaint ¶¶ 17, 56.
[3] Pl. Ex. 3.

committed by the person to be arrested." *United States v. Valentine*, 539 F.3d 88, 93 (2d Cir. 2008) (quoting *United States v. Patrick*, 899 F.2d 169, 171 (2d Cir. 1990)). More specifically, "[w]hen information is received from a putative victim or an eyewitness, probable cause exists unless the circumstances raise doubt as to the person's veracity." *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001). Here, the arresting officers acted on the sworn statements of a putative victim, so the case turns on whether the circumstances of the interview raised doubts about J.B.'s veracity. In other words, the pivotal question is this: given J.B.'s age, her partial disavowal, her comments about feeling alienated from her mother, the fact that she first accused Ward during an argument with her mother, or other facts known to the officers at the time, would an officer exercising "reasonable caution" have arrested Ward before conducting further investigation into the accusations?

The Court cannot answer that question now, as a matter of law, before the completion of discovery. The existence of probable cause depends on the totality of the circumstances, and the full circumstances of Ward's arrest are not in the record yet. Maybe the arresting officers will give deposition testimony showing that their conversation with J.B. provided reasonable grounds for Ward's arrest, despite the red flags memorialized in the police reports. Or maybe discovery will reveal that the officers ignored a medical examination or other extraneous evidence that further undermined J.B.'s story. On the record as it exists now, however, a reasonable fact-finder might conclude that J.B.'s equivocation and statements that Ward was causing her to feel alienated from her mother raised significant questions about the truth of her story.[4] *See*

---

[4] At this juncture, the officer defendants do not assert a defense under the doctrine of qualified immunity, which shields officers from liability for false arrest if it was "objectively reasonable" for them to believe

3

*Araujo v. City of New York*, 2010 WL 1049583, at *6 (E.D.N.Y. March 19, 2010) (declining to find probable cause as a matter of law at the motion to dismiss stage where the police acted on a seven year-old child's accusations that the arrestee had molested her four years earlier); *id.* ("Discovery may plausibly reveal that the [officers] lacked a reasonable basis for believing either (1) that a crime had been committed, or (2) that plaintiff was the perpetrator."); *cf. Wu v. City of New York*, 934 F. Supp. 581, 588 (S.D.N.Y. 1996) (Haight, J.) (finding *lack of probable cause* as a matter of law where police credited putative victim's story of assault over conflicting stories of two eye witnesses).  Accordingly, defendants' motion to dismiss the false arrest and false imprisonment claims is denied.

Defendants rely on district court cases finding that a putative victim's accusations against an arrestee established probable cause as a matter of law even though some facts known to the arresting officer tended to detract from the victim's story.  *See , e.g., Ullah v. Office of District Attorney et al.*, 2009 WL 2151357, at *5, 6 (S.D.N.Y. July 20, 2009) (rape victim's accusations established probable cause, even though arrestee claimed innocence and some time discrepancies existed in victim's story); *Obilo v. City Univ. of City of New York,* 2003 WL 1809471, at *7-9 (E.D.N.Y. Aptril 7, 2003) (similar); *Donovan v. Briggs*, 250 F. Supp. 2d 242, 251-52 (W.D.N.Y. 2003) (rape accusations by 16 year-old against her father established probable cause, despite officer's knowledge that victim had previously indicated an intent to frame her father).  With the exception of *Donovan*, however, the circumstances surrounding the arrests in these cases did not raise

---

that the arrest was lawful.  *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (quotations omitted).  In any event, the current record does not establish this defense: drawing all reasonable inferences in plaintiff's failure, the record permits the conclusion that it was not objectively reasonable for the officers to arrest plaintiff based on J.B.'s comments alone, without any corroborating evidence or further investigation.  *See Araujo*, 2010 WL 1049583 at *6.

4

substantial credibility questions. And in *Donovan*, where the officer conducted an extensive investigation into the putative victim's story before making the arrest, the court granted summary judgment on a complete and undisputed factual record, relying on the precept that probable cause is a legal question so long as the underlying facts are not in dispute. 250 F. Supp. 2d at 250. In contrast, the Court is aware of no case from within this circuit dismissing false arrest and false imprisonment claims before the completion of discovery where the available record raised as many doubts about the victim's veracity; or where defendants' own submissions to the Court raise serious doubts as to the completeness of the present record.

\*     \*     \*

Defendants' motion also raises other issues. First, they argue the NYPD is not a suable entity in light of § 396 of the New York City Charter. Defendants are correct. *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007) (quoting N.Y.C. Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.")). All claims against the NYPD are dismissed. Next, defendants argue the Complaint does not state a § 1983 claim against the City because it does not plausibly allege that the arresting officers acted pursuant to an "official policy or custom" when they violated plaintiff's constitutional rights, as required for municipal liability under the Supreme Court's decision in *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). *See Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). Plaintiff does not oppose this argument, and the Complaint contains only conclusory allegations of policy or custom, such as the assertion

that the NYPD has a custom of "arresting innocent persons." (Compl. ¶ 50.) These allegations do not suffice to state a claim for municipal liability. *See Araujo*, 2010 WL 1049583 at *9; compare *Wu*, 934 F. Supp. at 591 (municipal liability claim viable because arresting officers acted pursuant to an NYPD patrol guideline requiring officers to arrest any person whom an employee of a city agency accused of assault). Accordingly, the claims against the City are dismissed, as are the claims against the officer defendants in their official capacities. *See Adler v. South Orangetown Central School Dist.*, 2008 WL 190585, at *12 (S.D.N.Y. Jan. 17, 2008) ("When an official is sued in his or her official capacity, however, a court is to treat that claim as it would treat a claim against the municipality itself.").[5]

Finally, the Complaint also asserts state law claims for invasion of privacy, negligence, and prima facie tort. Defendants argue these claims are time-barred under General Municipal Law § 50-e, which requires a plaintiff pressing tort claims against a municipality or its agents to file a notice of claim against the municipality within ninety days of when claims arise. *See Dingle v. City of New York*, 2010 WL 2976521, at *7 (S.D.N.Y. July 28, 2010). Here, Ward's state law claims, which are premised on his allegedly unlawful arrest and imprisonment, accrued on May 9, 2007, the date of the arrest. *See, e.g., Martin v. County of Nassau,* 692 F. Supp. 2d 282, 290 (E.D.N.Y. 2010); *Mercedes ex rel. Brown v. Blue,* 2004 WL 2202578, at *11 (S.D.N.Y. Sept. 30, 2004).

---

[5] Construing the complaint broadly, defendants read it to press additional federal claims for malicious prosecution, conspiracy, and racial profiling. Defendants argue these claims should be dismissed as inadequately alleged. The Complaint does not clearly assert any of these claims, however, nor does plaintiff indicate an intent to pursue such claims in his opposition. Accordingly, the Court declines to address the merits of these purported claims. To the extent the Complaint does assert them, the malicious prosecution, conspiracy, and racial profiling claims are dismissed as abandoned.

He did not file a notice of claim until November 16, 2007, more than six months later. Accordingly, the state law claims are time-barred. *Id.* Plaintiff does not argue otherwise.

\*   \*   \*

Defendants have also filed a motion for sanctions pursuant to Rule 11 on the theory that plaintiff's claims are meritless and were pursued in bad faith. Litigants have made weaker Rule 11 motions probably. But the irony of this motion—in which defendants, who omitted the crucial page of a police report in an apparent effort to conceal a weakness in their case, seek sanctions against the adversary who corrected their omission—is unique. *See supra* at n.1. The Court is chewing on that irony. For now, it suffices to state the obvious: plaintiff's case is not frivolous and defendants' motion is denied.

## CONCLUSION

For the reasons stated, defendants' converted motion for summary judgment [20] is denied with respect to the false arrest and false imprisonment claims against the officer defendants in their individual capacities. All other claims are dismissed. Defendants' motion for sanctions [25] is denied. The parties may have 60 days to complete discovery. A status conference shall be held on December 3, 2010 at 10:00 a.m.

SO ORDERED.

Dated: New York, New York
       September 17, 2010

Richard J. Holwell
United States District Judge